Is that your briefcase? No, that's mine. Oh, that's yours. That's mine. All right. You may proceed. Thank you, Your Honor. May it please the Court, my name is Jeremy Cronodal of Hanes & Boone, and I represent Specs Family Partners. I'd like to reserve five minutes for rebuttal. This is a duty-to-defend case, but the claim in this case against the insured is not a fully developed legal pleading. It instead consists of two skeletal demand letters alleging that Specs was negligent in complying with security standards and demanding payment for the assessments and fines that followed. The district court erroneously construed that claim too narrowly in violation of Texas law. The court ignored the allegations in the claim that would support a non-contractual theory of liability and found that the policy's contractual exclusion in barred coverage. Let me ask, I want to be sure I understand how this is set up. The theory is that Specs, Specs all over town, right? That's right, Your Honor. The liquor purveyor of choice. Okay, so Specs, let's see, is then, the claim is that they're negligent or whatever on how they handle their credit card transactions. Correct. Right? Correct. Okay, then first data is in the middle. Right. And then you actually have a bank in between, and then you have the card brands, MasterCard and Visa. So the claim is that Specs has been negligent in how they handle things. Then who pays? First data? So the way it works is it's a very kind of complicated contractual arrangement. The customer who comes into Specs and uses her card has a contract with her bank who has a contract with the card brands, who then have a contract with a data processing company like First Data, or there's sometimes another institution in between. And so when there's a fraud on the customer's account, the credit card companies and sometimes the bank have promises to the customer to reimburse that person for the fraud on their card. And then they go and find other entities to help pay those reimbursements back. Here, what happened is there was a fraud, there was a data breach, a criminal attack on Specs' account, and so there was fraud on a lot of customers' cards. Ultimately, the credit card companies reimbursed those cardholders, and then they went to First Data to get reimbursed, and pursuant to a contract between First Data and the card brands, First Data paid that back. And then it went to Specs to get reimbursement. The problem for First Data is the contract between Specs and First Data does not require Specs to pay those assessments and fines. There's a consequential damages waiver in the contract. What about a contribution right? I'm not aware of that theory being used. That would not be a, that would be, wouldn't there be a contribution claim against Specs? There could be. So why is that not, why is that not permitted here? Well, there could be. The problem is for First Data, this area of the law at this time was really evolving, and financial institutions and data processors were looking for theories of liability to hold the merchants liable when an attack occurred on their watch. Sometimes they could use a contractual theory, but other times they couldn't, and we cited numerous cases in our briefs where they had pursued negligence claims, state statutory. I mean, it's a negligence problem. Correct. For Specs, the way the credit card. Well, that's definitely how it's alleged in the claims, and for that reason alone, we believe there's a duty to defend here, because remember, exclusion N, which is the contractual liability exclusion, has an exception. It says it does not apply if the liability would have attached in the absence of the contract. And so if they're alleging anything other than a contractual theory of liability, then the exclusion doesn't apply, the duty to defend is triggered, and Hanover is obligated to defend the claim. So who's going to wind up with a hit here for this stuff? Would it be First Data? First Data has already paid the assessments. They've paid. At the moment, they have paid. Don't they then have a contribution claim against Specs? Well, that, you know, obviously we represent Specs. We don't believe Specs is liable for any of this. I think you can read these pretty vaguely. But if they do, I mean, then wouldn't, isn't there a duty to defend here? It's not a, a contribution claim is not a, it's a tort sort of idea. Absolutely right, Your Honor. So I think you can definitely read these claim letters to be saying that, well, to be careful, First Data was careful not to limit itself to a contractual theory of liability. First Data is a big company. They're very sophisticated, a billion-dollar data processing company. They know how to draft a demand letter that's based on a contractual theory of liability, and these letters are not it. And the reason is they knew there was not contractual liability here, so they were preserving all options at that stage in the proceeding to bring whatever claim they decided would work down the road. For our purposes in this case, all that matters— Hold on just a moment. Judge Jones has a question. I'm sorry. I just have a question, Mr. Canodal. The contract between Specs and First Data, A, is it in the record, and B, if it is, is it properly before us for any purpose? It is in the record, Your Honor. I believe that Hanover attached it to their request for judicial notice of extraneous materials. And the answer to the second question is no, the court should not consider it because, as this court is well aware, Texas law has held repeatedly that in analyzing the duty to defend, it follows the eight corners rule, which only looks at the four corners of the claim, which is these two letters here, and the four corners of the policy. So it would be inappropriate to consider anything outside of those two documents. Well, and to be more precise, it considers not the theories, legal theories that are alleged, but the facts within the four corners of the claim, right? That's exactly right. And so our argument here is that the facts alleged in these complaints, though vaguely alleged to be sure, are sufficient to support non-contractual theories of liability, the negligence or contribution rights or whatever claim First Data wanted to come up with later. So that's the first independent reason why the duty to defend is triggered here. I'd like to turn to a second and a third reason why those claims triggered the duty to defend, even putting that aside, and that is because these claim letters demanded non-monetary relief that had nothing to do with or didn't arise out of contractual liability. So in the first claim letter, First Data demanded full compliance with, in addition to demanding the payment for the assessments and fines, it demanded full compliance with what is called PCI DSS security standards. So those are kind of industry standards that the credit card companies have devised and adopted in their rules and procedures that require merchants who are going to take their cards to make sure their system is secure. And First Data said you've got to immediately make sure that you are PCI DSS compliant and go out and hire a qualified security assessor, which is part of that whole network requirements, to audit your system and ensure that it is compliant. That was a very significant, expensive process that took months. First they had to hire lawyers to defend these allegations against them, and then secondly had to hire an outside security firm to help audit their system. Under the plain language of the policy, which defines claim to include any demand for non-monetary relief, that demand alone constitutes a claim, and in making that demand, First Data made no reference at all to the party's contract. In fact, in explaining why or how specs needed to comply with that demand, it was referencing the card brand standards, master card rules and security procedures. So there's certainly nothing that links that demand to any kind of contractual liability. So that's a second independent reason why the duty to defend is triggered here. Under Texas law, once one part of the claim is covered, then the insurance company has the obligation to defend the entire claim. Now there's a third independent basis, and that is that the claim arose out of criminal liability, not contractual liability. Now the way this argument works is to the extent you read these claim letters as alleging that specs somehow breached its contract with First Data and caused First Data's damages, the problem for Hanover is that it also alleges that a third-party criminal attacker attacked the system, and it's not clear from the face of the claim letters what actually gave rise to First Data's damages. And so we cited cases that have held that in these data breach cases, when a third-party criminal attacker hacks the system, that becomes, in some cases, it can be the superseding or independent cause of the losses. In other words, specs could have been noncompliant with the security standards all day long, not that we're conceding that, of course, and the third party could still somehow get in and attack the system. And so on the basis of just the claim letters alone, it's not clear whether First Data is saying their harm was caused by that fraud or whether it was caused by something specs did. As a result, you have to interpret that claim in the insured's favor under Texas law, and that would trigger yet another reason why the duty to defend is triggered here. Unless the court has any further questions on the duty to defend, I'd like to shift gears and talk about our separate defense funding agreement. So the defense funding agreement was a contract that specs and Hanover entered into. Once Hanover initially agreed to defend, it reserved its rights, of course, but it agreed to defend, and a month or so into that relationship, Hanover and specs decided that they wanted something more concrete. Hanover wanted to lower the rates of specs' lawyers and wanted more control over the litigation, and so they entered into a separate contract, which we call the defense funding agreement. Now the district court, when we filed our complaint, we had a separate breach of contract claim based on the DFA. The district court erroneously dismissed that claim, and that was wrong for two independent reasons. First, when Hanover moved for judgment on the pleadings, it did not reference the DFA at all. It didn't cite the DFA. It didn't mention it. It didn't reference the account that is the breach of contract claim on the DFA, and yet the district court, sua sponte, dismissed the entire case. So that's the first reason why that is reversible error. We've cited numerous cases to the court that have held district courts can't do that unless they give the litigants notice, and there was no notice here. The second reason why that claim should not have been dismissed is that Hanover can't show that it complied with the DFA. So once they entered into the DFA, things went well for a month or so, and then Hanover started getting specs bills for the litigation in Tennessee against First Data. And Hanover said, wait a second, these aren't defense expenses, and just stopped paying. We believe that's wrong because specs had no other option but to go file a lawsuit against First Data. First Data made the claim, and then it engaged in self-help and took the money and held it. And so specs, with nothing else to do, filed a lawsuit in Tennessee. We cite the Simon v. Maryland case, a decision by this court, that held under nearly identical circumstances, that when the insured is forced to go file a lawsuit, that doesn't mean it's affirmative. It can still be considered defense expenses. The second reason Hanover has now given on appeal is that, well, exclusion in applies, and so we just quit paying. We were entitled to do that under the DFA. Of course, we don't believe exclusion in applies. But even if it did apply, the agreement required Hanover to provide written notice of any reason why it wanted to terminate the DFA and give the reason, and then it still had to pay for ten days to give specs plenty of time to figure out how that would affect its litigation strategy. And here, that never occurred. There was a months-long period where Hanover was required to be performing under the DFA before it was finally terminated and when it was terminated. And so even if exclusion in applied here, again, we don't believe it does, we believe we're entitled to the damages under the DFA for that several months-long period when Hanover was failing to perform. I see that my time is about to expire, so I'll reserve the rest of my time for rebuttal. Thank you, Counselor. Good morning. May it please the Court, my name is Perry Shores of the law firm of Lewis, Perspoy, Biscard, and Smith, and I represent the Hanover Insurance Company. Let me address what we initially talked about this morning, which is the nature of this claim, and then I'll address why theories of contribution or negligence are clearly not at issue in whatever claims there are against specs by First Data. The nature of this claim essentially is that MasterCard and Visa suffered losses because of a data compromise event that required them to reimburse cardholders for fraud and compromised cards. MasterCard and Visa consequently assessed fines and fees on First Data pursuant to contract and pursuant to rules and procedures that were in accordance with that contract. So the liability, the primary liability for the fees and fines was assessed on First Data. First Data then turns to specs as the merchant, and the right that they have against specs is not because specs owes fees and fines to MasterCard and Visa and other card issuers. It is because they have a contract that contains an indemnification provision, and whether or not there may be legal arguments as to whether or not that indemnification provision applies, it's very clear from the demand letters that were sent by First Data to specs that the basis for the claim for reimbursement of those fees and fines through the reserve account that they were creating was based on the indemnification provisions in the merchant agreement. So the relationships, and frankly as counsel said at the beginning of his argument, that this is a complicated contractual arrangement. This is a contractual arrangement among the parties, and that is why exclusion N applies. Now the theory of contribution was brought up. Contribution, as I understand, to the extent that it applies at all under Texas law, would be applicable if First Data were liable to MasterCard and Visa under some tort theory and then turned to specs as a co-tort feeser and asked for contribution. You got me into this problem, and now you can pay your share. Right. So this isn't a question of contribution here. Why not? Because again, the contribution would be under some sort of tort theory that First Data initially has been sued or has had a claim against it on some tort theory, which as I just pointed out, it hasn't. It was asked or it was demanded to pay fees and fines to MasterCard and Visa pursuant to contractual rights and rules and procedures in conjunction with that contract. What's the basis under which specs has to pay? The basis is the contract between First Data and specs where there is an indemnification provision, and that indemnification provision provides that specs is to indemnify for losses arising out of any negligent or other wrongful conduct of specs in connection with the subject of the merchant agreement. And that's the theory that was asserted in the demand letters. That was the theory that was asserted in the pleadings in the Tennessee litigation. There was never any assertion of any other basis for a right to go after specs. And frankly, But when you talk about in the letter allegations about noncompliance with third-party security standards, that doesn't sound like something Well, and that also is contractual. It is contractual because it's the merchant agreement between First Data and specs that requires specs to comply with the card issuer rules and procedures. That's directly in the contract, and it's under that theory that specs then becomes liable for contractual indemnification under the indemnification provision in the merchant agreement. So, yes, you can characterize the conduct whatever way, negligent or not, but the basis for liability and the theory of liability is the contract, the combination of the provision saying they need to comply with the rules and procedures, and the indemnification provision that says that if First Data suffers losses because of your negligent or wrongful conduct, then you have to indemnify us under this contract for those losses, in this case the fees and fines. This is Judge Jones. My understanding of the Eight Corners rule has always been that it absolutely does not turn on the legal claims that are asserted, typically in a petition, but only on the facts and what theories those facts may give rise to. And so that's why I was sort of surprised that nowhere did Judge Miller cite what I thought was the foremost principle about the Eight Corners rule, and of course you don't mention it either, I think. Well, the agreement is referenced in the demand letter, and so that is a fact, and the merchant agreement is not only referenced in the demand letter, it's referenced in the complaint in this case, and under pleading rules where a document is referenced in the pleadings, it is part of those pleadings and part of the record and part of the basis for the complaint or the claim. And so under either theory, under the theory of what the demand letter is and the fact that the demand letter refers to the merchant agreement, and then that the complaint by specs in this case refers to the merchant agreement, places that in the record as part of the materials that can be considered for the duty to defend. So exclusion N applies as long as there is, and we've cited multiple cases out of the Fifth Circuit that stand for this proposition, as long as there is at least an incidental relationship between the claim and the excluded risk here, the contract or agreement. Here, I think we've gone way beyond just an incidental relationship. There is no relationship between these parties but for the merchant agreement. There's no basis, and there's been no basis that's been cited by specs for any kind of a special relationship or other relationship that would create a common law duty by specs to first data in the absence of the contract. So here, again, we have at least an incidental relationship, and frankly, even if it were a but-for standard, it would be satisfied that this arises out of the contract. So let me skip over to the defense funding agreement for a moment and just remind the Court that that defense funding agreement was an agreement to govern under what terms defense payments would be made. But it had a very important provision that has consistently been ignored by specs, that that defense funding agreement is subject to all of the terms in the policy. So when counsel for specs says even if exclusion N applied, they'd have a duty to defend, that's not what the defense funding agreement says. If exclusion N applies, under the policy, there's no duty to defend, and because the defense funding agreement is subject to the terms of the policy, the defense funding agreement would not impose any independent duty to defend. There was no termination of the defense funding agreement. The reason that payments weren't made was the position by Hanover that the defense bills that were submitted were not defense bills that were covered pursuant to the policy and therefore weren't covered pursuant to the defense funding agreement. So it's not a question of whether or not there was a termination of the defense funding agreement. Nonpayment of certain defense costs doesn't amount to termination. It was merely a determination that under the defense funding agreement, those amounts weren't allowed. With respect to the nature of the claim in that there was allegations of third-party criminal activity and counsel said it may have been a superseding cause. But the problem with that is if criminal conduct of third parties was a superseding cause of First Davis loss, then specs could not possibly be liable for any claim of negligence or other common law duty because a superseding cause would eliminate any kind of common law tort theory against specs. So the criminal liability of third parties is irrelevant to this issue because it does not define what the claim is and can't define what the claim is because if that were the basis for the claim, the only claim that First Data would have would be against the third-party criminals and not specs. Now with respect to defense costs that were incurred in the Tennessee litigation, and frankly all of this is, everything in the Tennessee litigation was claims by specs against First Data, affirmative claims by specs against First Data. And in the all of this decision by this court, it's very clear that even if there's an argument that the prosecution of affirmative claims somehow is helpful in the defense of another claim, that it still would not be covered as affirmative costs of prosecuting a claim that the policy only covers the defense costs. Now, as far as exclusions are concerned, I also would alert the court to the Inree Hartland payment case, which I think is the closest case factually to this one. And there's a very critical quote in there that I think really governs, well, to the extent, I wouldn't say governs, but I think it's very appropriate here by the Southern District of Texas. And they state the following, quote, By participating in the Visa and MasterCard networks, the financial institution plaintiffs entered into a web of contractual relationships that included not only issuer and acquirer banks, but also third-party businesses, such as Hartland, that processed transactions for network members. In light of the relationship between Hartland and the Visa and MasterCard networks, the network regulations, not tort law, are the appropriate means for the financial institution plaintiffs to seek relief. Additionally, the damages the financial institution plaintiffs seek, the cost of covering fraudulent charges and reissuing cards, are the kinds of damages expected to flow from a data breach, damages that can be addressed in the parties' contractual arrangements. And here, that's what we have. We have a contractual arrangement to handle those payments. And where there is a contractual arrangement that provides for how the fees and fines are to be handled that are assessed against first data, then that contract is what defines the nature of any claim that first data can bring against specs. Because it's dealt with in the contract, common law is not going to impose an alternative theory that negates what the parties agree to, absent some sort of public policy reason. And there has been none identified in this case. So because the contract here specifically governs how those fees and fines are to be ultimately paid by specs, it is a contract claim and can't be anything but a contract claim. But I have a question about that because it's a contract. The contract certainly was not before the district court. We moved to supplement the record on appeal with it. And it was not properly considered within the eight corners rule. And therefore, how can you say that the contract definitely excludes common law causes of action? Well, as we cited in the briefs, the merchant agreement is specifically referenced in specs complaints in this matter. So it is a part of the complaint, whether it's attached or not. That is for fifth district procedural law. But it wasn't before Judge Miller, was it? It was. Well, I thought you filed a motion to supplement with it in this court. Well, we filed a request for judicial notice. And in that request, in connection with that request, we specifically made the argument to Judge Miller that the merchant agreement is admissible for purposes of determining the duty to defend because it was specifically referenced in the complaint by specs in this litigation. And so whether or not we also asked for judicial notice just as sort of a belt and suspenders procedure, the merchant agreement was before Judge Miller. And again, the merchant agreement is also referenced specifically as the basis for the claim in the demand letter. And therefore, under those same pleading rules, or at least the principles behind those pleading rules, I don't think that you can interpret the demand letter without that merchant agreement. So either, one, it's a part of the demand letter because it's referenced specifically therein as the basis for liability, or two, our request for judicial notice of that merchant agreement should be granted because to the extent that it's so intertwined with that demand letter, because it says based on the merchant agreement we're establishing this reserve account, then to the extent that the court, I believe, would not be able to determine the duty to defend without looking at that merchant agreement, it should be admitted through judicial notice because it's absolutely necessary to determine the nature of the complaint and doesn't overlap with any issues in the underlying case because it's not being used to establish the truth or falsity of any of the facts in the underlying claim, but just to establish the nature of the claim that is being made by first data against facts. Does Judge Miller hold oral argument before granting the motion to dismiss? I'm sorry, I didn't quite hear that last part. Did Judge Miller hold oral argument before granting the motion to dismiss? It was a motion for judgment on the pleadings. He did not have oral argument on that, no. Okay, and the second thing is, I mean, isn't it correct that all the arguments you're making could be raised in a summary judgment motion? Well, no, again, because the merchant agreement is part of the pleadings in this case, so judgment on the pleadings is appropriate on anything that's contained within the pleadings. The merchant agreement is, by operation of procedural law, part of the pleadings and therefore can be brought as a matter of judgment on the pleadings. I mean, it could have been summary judgment also, but there's nothing that prohibits the parties from seeking judgment on the pleadings for anything that is contained within the complaints, and because it's referenced, specifically referenced in the complaint, it's part of the pleadings and appropriate for judgment on the pleadings. And that merchant agreement needs to be examined in connection with determining whether or not the duty to defend is triggered. Is that what you're saying? Well, I think it certainly is highly relevant. I mean, I suppose theoretically you could just look at the words in the demand letter saying that we're seeking this relief under the merchant agreement, but I think to really understand So now we're talking about 12 corners, I guess. We're talking about the demand letters, the policy, which includes the exclusion end, and this merchant agreement. Well, I guess I would disagree with the 12 corners description of it because, again, it's essentially incorporated into the demand letter by specific reference by saying that we're seeking this relief pursuant to the merchant agreement. It is essentially part of the demand letter and, therefore, within the four corners of the demand letter. Yes, it's an additional document to look at, but I don't believe that we're asking for a new 12 corners rule. It's still within the eight corners because it's part of the four corners of the demand letter, the claim. I see my time is almost up. If there are any other questions, we're happy to answer. Otherwise, thank you, and I ask for this judgment on the pleadings to be affirmed. Thank you, Counsel. Thank you. Rebuttal. Thank you, Your Honor. I'll start with the merchant agreement. It would be inappropriate to consider it at any stage of this case because of the eight corners rule. In determining the duty to defend, you look only at the four corners of the claim letter and the four corners of the policy. Now, I'd like to just kind of try to organize my rebuttal in terms of the three independent arguments we made  So I'll start with the first argument that the letters potentially give rise to a non-contractual theory. My colleague referenced the Heartland case, but that case actually went up on appeal to this court, and this court reversed the dismissal of the non-contractual claims. And Heartland is a little bit different factually, but the point of the opinion is that the economic loss doctrine did not preclude tort claims and contract claims. Now, that was not an insurance case, not a duty to defend case, but my point is that shows that at the early stage when these claim letters were drafted, based on the factual allegations in those letters, we didn't know what theory of liability First Data would ultimately pursue. And under Heartland shows us that it can be tort claims, non-contractual theories. As to the question about contribution, Judge King, again, we don't know from the four corners of the claim why First Data is liable for these assessments and fines. Hanover's counsel referenced a contract, but we don't know that from the four corners of the claim. And in any event, if First Data had refused to pay the entity that was demanding the payment under their contract, then there presumably could have been non-contractual claims filed against First Data. At this stage in the game, when these claim letters were issued, none of that had been developed or determined. And I would finally, as Judge Jones referenced, what matters in determining the duty to defend when you're looking at the claim is the factual allegations alleged, not the legal theories. And I would cite Judge Graves' opinion from December in the LSV case, in which you very thoroughly worked through different proceedings or different petitions and concluded that you look at the factual allegations in the petitions, not the legal theories that were alleged. And so here, even though there is a reference to the contract, that certainly does not preclude there being non-contractual theories as well. Now, our second independent argument was that the demand letters included a claim for non-monetary relief. Hanover's counsel said that the duty for specs to be compliant with these security standards is in the contract. Well, that's not in the claim letters. Again, if you look at just the claim letters, the reference to being PCI DSS compliant with the data security standards has nothing to do, there's no reference to the contract. The only reference to the contract in the claim letters is at the back end on the second page of each letter when First Data tells specs, we're going to establish a reserve account. It was the vehicle by which First Data intended to reimburse itself for these assessments and fines. They certainly didn't say, this is our only theory of liability against you. And as to the non-monetary relief, they did not link that demand to anything under the party's contract. And then third, our argument about there being superseding criminal liability. The point is that there are multiple ways you can read these vague letters, and one potential way would be that what caused First Data's harm was superseding criminal conduct. And if that's how the claim letters are interpreted, then exclusion and wouldn't apply, the duty to defend is triggered. Now, Hanover's counsel also mentioned the defense cost issue, and he suggested that one reason why either they're not in breach of the DFA or not in breach of the policy is because these aren't defense costs. I want to point out that when Hanover moved for judgment on the pleadings below, they did not argue that the bills submitted by specs weren't defense costs. Their only argument was exclusion in. So that has not been, I guess, preserved. That cannot be a ground on which the policy doesn't apply here. And in any event, as I argued earlier, I see that my time is up. May I finish my thought? You may. The binding case or the authoritative case in this area is the Simon v. Maryland case. All this case that he cited is different and factually distinguishable. Thank you. Thank you, counsel. That concludes the matters that are on today's docket for oral argument. We stand in recess until 9 o'clock tomorrow morning.